JAMES M. FLOWER *et al.*

*v.*

JOHN L. BEVERIDGE *et al.*

*Filed at Ottawa March 28, 1896.*

1. TRIAL—*duty of court to mark propositions of law "held" or "refused."* It is the duty of the court trying a case without a jury, to follow the requirements of the statute, and endorse on the propositions of law presented, "held" or "refused," and nothing more.

2. SAME—*stating that a proposition is "not warranted by the evidence," not a refusal.* A proposition of law is not to be regarded as refused because the court holding it as a correct proposition of law states that it is not warranted by the evidence.

3. PAYMENT—*when payment by debtor's attorney need not be refunded.* One who receives money in payment of an indebtedness from the attorney of a surety thereon, who was employed by the surety alone and who collected the money on a judgment for the surety, is not required to refund the money to the attorney merely because he had notice of and reasonable opportunity to defend an action in which the attorney was compelled to make a different appropriation of the money.

*Flower* v. *Beveridge*, 58 Ill. App. 431, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

This was an action of assumpsit, brought by Flower, Remy & Gregory, attorneys, against Beveridge & Dewey, bankers, to recover $2400 which they allege they paid to the defendants, while acting as their attorneys in certain

replevin suits, and which sum, about three years later, they were required to pay again to the clerk of the United States court under a decree in a certain cause pending in that court.

Upon looking into the record, it appears that in March, 1882, there was a firm in Chicago known as Boies, Fay & Conkey. The three named persons were general partners and Julius K. Graves was a special partner. The firm became insolvent, and in December, 1882, Boies and Graves attempted to withdraw. In January, 1883, a large number of judgments were confessed by the firm of Fay & Conkey, as it was then known, in the State and United States courts in Chicago. One judgment was entered in favor of the First National Bank for $42,000, and another in favor of Julius K. Graves for $18,375. The plaintiffs were acting as attorneys for the various judgment creditors. Executions were issued on the two judgments above named, and levied upon all the merchandise of Fay & Conkey, the bank execution being a first lien and the Graves execution a second lien. While the sheriff was endeavoring to collect under these judgments a large number of replevin suits were commenced by various creditors of Fay & Conkey, and the goods claimed by the several creditors were taken from the sheriff under the replevin writs. The property that remained in the hands of the sheriff was sold under the first execution, and he realized out of the sale enough to pay the judgment of the First National Bank in full, leaving a net surplus of $10,410.68 to apply upon the Graves execution, which stood second. This amount the plaintiffs paid over to the First National Bank, for the account of Beveridge & Dewey, on February 26, 1883. This payment was the first payment made on the indebtedness of Fay & Conkey to Beveridge & Dewey, and was sufficient to cancel three of the five notes of Fay & Conkey then held by the bank to secure the loan by it to Beveridge & Dewey, and left besides a small surplus of

$360 to apply on a fourth note. The plaintiffs also succeeded later in settling nine of the replevin suits, and from this source they realized for Beveridge & Dewey the sum of $2861.60. After deducting their charges and disbursements they paid over to them the balance of the fund, amounting to $2490.33. The payments were made to them from time to time, as the settlements were effected and the money collected, the first payment having been made on June 30, 1883, and the last on July 14, 1884.

On March 1, 1883, Chester C. Corbin filed a bill in equity in the circuit court of Cook county, against the members of the firm of Boies, Fay & Conkey, and made all those who had obtained judgment by confession parties thereto, as well as the plaintiffs. This bill charged that the pretended withdrawal of Boies and Graves from the firm, the giving of the demand notes and the taking of judgment by confession thereon were a fraudulent scheme to give unlawful preferences to certain creditors in the assets of the special partnership, which was a trust fund and in which all creditors were entitled to share equally, and further to release the defendant Graves from his liability, and asked for a decree to compel these judgment creditors, as well as the plaintiffs, to pay into court whatsoever sums they might have secured thereunder. Defendants were not made parties to this bill.

It appears that a short time after the judgments were confessed, two creditors' bills were filed in the United States Circuit Court, and Bradford Hancock was appointed receiver. The Corbin suit was removed to the United States Circuit Court, and it was subsequently held in that case that the judgments confessed by Fay & Conkey were null and void and that the estate should be administered for all the creditors, and a decree was rendered against the executrix of Hancock, receiver, requiring her to pay to the clerk of the United States court the sums of money which had been collected by Flower, Remy & Gregory and paid to the defendants under the

replevin suits. After this decree, Flower, Remy & Gregory paid to the clerk of the United States court said sum of $2490.33, and it is this sum, with interest, which they seek to recover from the defendants, Beveridge & Dewey.

The defendants pleaded the general issue and the Statute of Limitations, and on a trial in the circuit court, without a jury, the court found the issues for the defendants, and on appeal to the Appellate Court that judgment was affirmed.

WILLIAM M. BOOTH, and JAMES S. HARLAN, for appellants:

In Chitty on Contracts, 474, it is said: "The action for money had and received is an equitable action, and lies * * * to recover money which, *ex œquo et bono*, the defendant ought to refund, and will be sustained and a recovery allowed when a bill in chancery would authorize a decree for the plaintiff." And in 2 T. R. 153, it is said: "Whenever the plaintiff could recover in a court of equity he can recover in an action for money had and received, and all that he is bound to prove is, that he has equity and good conscience on his side."

. The supposed subsequent insolvency of Graves does not affect the right of the agent to recover from the principal a loss incurred in pursuance of the agency. *Kingston* v. *Elbridge*, 40 N. Y. 391.

Where parties primarily liable are notified, they are bound by a judgment against those secondarily liable. The notice need not be a formal one. *Chicago* v. *Robbins*, 2 Black, 423; *Robbins* v. *Chicago*, 4 Wall. 672.

H. H. C. MILLER, and W. S. OPPENHEIM, for appellees:

The cause of action is barred by the Statute of Limitations. *Pennsylvania Co.* v. *Railroad Co.* 141 Ill. 197; *Leather Bank* v. *Merchants' Bank*, 128 U. S. 26.

The finding of the lower court is sustained by the evidence. *Railroad Co.* v. *Winkelman*, 47 Ill. App. 276; *Conrad* v. *Kloepfer*, 33 id. 228; *Schweinfurth* v. *Matson*, 37 id. 62.

Should the facts be found as claimed by plaintiffs, defendants cannot be placed *in statu quo.*   *Guild* v. *Baldridge,* 2 Swan, (Tenn.) 295.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

So far as the facts are concerned they may be regarded as settled adversely to the plaintiffs by the judgment of the Appellate Court.   The only question, therefore, to be determined here is, whether the trial court ruled correctly on the propositions of law submitted on the trial. Upon this branch of the case it is assigned as error that the court erred in refusing the fourth and fifth propositions of law requested by the plaintiffs, as follows:

4. "If the evidence shows that plaintiffs were acting as attorneys for defendants in looking after the replevin suits out of which the moneys in controversy were collected, and that they, in good faith, collected and paid them over to defendants, and that by the decree of the United States court in a suit to which plaintiffs were parties and of which defendants had notice, though they had no definite knowledge as to its entire scope, it was determined that these moneys were not the property of the defendants but must go to other creditors, and the plaintiffs, being thus liable therefor, paid the same under the decree, then they can recover them from the defendants."   (Held as a correct proposition of law, but not warranted by the evidence in this case.)

5. "If, prior to the time the Circuit Court of the United States for the Northern District of Illinois ordered and decreed that the money in controversy in this suit should be paid over to the clerk of that court, the plaintiffs notified the defendants that they should look to them to reimburse them in case such decree was made, and the defendants had a reasonable opportunity to appear and defend therein, then the defendants are so far bound by that decree against the receiver's administratrix that the

plaintiffs are entitled to recover the amount which they so paid on account thereof, out of moneys collected by them under the judgment against Fay & Conkey, assigned to the defendants." (Refused.)

As to the fourth proposition, it was not refused, but, on the other hand, the court held it to be a correct proposition of law. The fact that the court added that the proposition was not warranted by the evidence in the case, cannot be regarded as a ruling of the court that the proposition did not announce a correct principle of law and that it was refused. Section 42 of the Practice act requires the court to write on the propositions submitted, "refused" or "held," and we regard it the duty of the court, in the trial of a cause, to follow the requirement of the statute and endorse on the propositions of law "refused" or "held," and nothing more. But the mere fact that the court may add, after the word "held," a remark of explanation, cannot be construed into a refusal of the proposition. The court held the law as requested by counsel, but at the same time was of the opinion that under the facts as established by the evidence the law relied upon did not apply.

We now come to the fifth proposition, which the court refused. It will be observed that this proposition ignores entirely the important question whether the relation of attorney and client ever existed between the plaintiffs and the defendants. If the plaintiffs were not employed by the defendants to collect the money which they collected and paid over, we perceive no ground upon which they can be held liable; and yet the proposition renders the defendants liable if they had notice of the action in the Circuit Court of the United States, and a reasonable opportunity to appear and defend before the decree was rendered. It will be remembered that the money paid over to the defendants was collected on a judgment in favor of Graves against Fay & Conkey, which never belonged to the defendants. The judgment was obtained

by the plaintiffs acting as attorneys for Graves. The circuit and Appellate Courts have found that the plaintiffs were not employed by the defendants, but that they acted for Graves in obtaining the judgment and collecting the money. The Graves judgment was at one time assigned to defendants as collateral security, but subsequently, and before the money was collected, it was reassigned to the First National Bank, and the latter held it in trust when the money was collected, and the money was paid over to the defendants, no doubt by direction of Graves. If Graves saw proper to employ the plaintiffs, as attorneys, to collect money from Fay & Conkey on a judgment in his favor, and pay the same over to the defendants in payment of an indebtedness held by the defendants against Fay & Conkey, upon which Graves was security, upon what ground can it be held that in the event that some court subsequently renders a decree that the money should have been applied in another direction, the defendants, who received the money and applied it, should be required to refund it? We think it is apparent, when the transaction is viewed in its true light, that the money turned over by the plaintiffs to the defendants was paid them as money collected for Graves in a judgment in his favor, and it was paid in liquidation of Graves' indebtedness to the defendants. The proposition is fatally defective in authorizing a recovery, regardless of the fact whether the money in question was collected and paid over by plaintiffs as attorneys for the defendants or not, and we think it was properly refused.

It also appears that the decree in the *Corbin case* was ultimately taken to the Supreme Court of the United States and reversed, (see *Graves* v. *Corbin*, 132 U. S. 571,) but it will not be necessary to allude to this branch of the case, as what has been said disposes of the case.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*